## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| CUSTOM COMPONENTS SALES, INC., a South Carolina Corp., and DOUG KOPSCIK, an individual,<br><br>PLAINTIFFS<br><br>v.<br><br>METCAM, INC., A Georgia corporation<br><br><br>DEFENDANT | **CIVIL ACTION NO.**<br><br>TBA<br><br>COMPLAINT FOR:<br><br>1.  Breach of Written Contract.<br>2.  Violation of *GA Code Ann.* §§10-1-700 through 10-1-704.<br>3.  Quantum Meruit.<br>4.  Promissory Estoppel.<br>5.  Accounting.<br>6.  O.C.G.A. § 13-6-11.<br><br>**DEMAND FOR JURY TRIAL** |

COME NOW Plaintiffs, Custom Components Sales, Inc. (hereinafter "CCS")

and Doug Kopscik (hereinafter "Kopscik") by and through their undesigned

attorneys, and allege against Defendant Metcam, Inc. (hereinafter "Defendant") as

follows:

## PREFATORY ALLEGATIONS

### PARTIES

1. Plaintiff CCS is, and at all times herein mentioned was, a corporation

organized and existing under the laws of South Carolina, with its principal place of

business in the City of Greer, South Carolina.

2. Plaintiff Kopscik is an individual who was at all times herein relevant residing in the city of Greer, South Carolina. CCS and Kopscik are hereinafter sometimes referred to collectively as "Plaintiffs."

3. Defendant Metcam, Inc. is a Georgia corporation with its principal place of business at 305 Tidwell Circle, Alpharetta, Fulton County, Georgia 30004-5638. Defendant may be served with process by serving its registered agent, Bruce A. Hagenau, at 305 Tidwell Circle, Alpharetta, Fulton County, Georgia 30004-5638.

## JURISDICTION / VENUE

4. This Court has jurisdiction over the parties and subject matter of this action pursuant to 28 U.S.C. §1532(a), as (i) the parties are citizens of different states and there is complete diversity of citizenship and (ii) the amount in controversy, exclusive of interest and costs, exceeds $75,000.00.

5. Venue is proper in this District, pursuant to 28 U.S.C. §1391 as Defendant is a resident of this State and District, regularly does business herein, and a substantial portion of the events or omissions giving rise to the claim occurred within this District.

## BACKGROUND

6. Plaintiffs serve as independent sales reps on behalf of manufacturers to market and cultivate sales for the manufacturers' products. In return for their

services, manufacturers pay commissions to Plaintiffs on sales made. Plaintiffs derive no other income in representing such manufacturers. Their sole compensation is through sales commissions based on actual sales made. As independent contractors, Plaintiffs were solely responsible for expenses incurred in marketing Defendant's products.

7. In January 2003, CCS signed a written contract (the "2003 Contract") with Defendant, a true and correct copy of which is attached hereto as Exhibit "A," by which it was appointed Defendant's sales representative, with specific assigned accounts as its territory. The parties performed under the 2003 Contract, abiding by its terms, until April 2014, at which time the parties mutually agreed to abandon the 2003 Contract.

8. In an email to Kopscik dated April 11, 2014, a true and correct copy of which is attached hereto as Exhibit "B", Defendant's President stated: "*we both agree that our existing commission agreement* [referencing the 2003 Contract] *is obsolete and will be terminated at the end of this month, with no continuing obligation under such agreement in any form or fashion.*" That communication then summarized the parties' new contractual agreement, referencing various decreasing commission percentages for sales to a specific customer, Carrier Corp., with the applicable percentage being determined by the date of the order.

9. Although the commission reductions under the agreed-upon restructure were supposed to take place month by month, between April 2014 and July 2014, the April 11, 2014 email contained clerical errors, resulting in a repetition of the same dates despite the fact that the commission rate was stated to decrease (see points 1-5 of April 11, 2014 email - Exhibit "B"). The final sentence concerning the commission structure for Carrier Corp. states: "*Commission for payments received from May 1 [2014] onward will be made at 1.00%.*" However, it is clear from the context that the date stated should have been August 1, 2014. This is corroborated by the fact that, from August 1, 2014, through the termination date, Defendant paid commissions for sales to Carrier Corp. at 1.0%, which is an 80% decrease from the original 5.0% rate stated in the 2003 Contract.

10. Plaintiffs accepted this new contractual offer in a reply email dated April 12, 2014, with the consideration to Plaintiffs being that, in return for giving up 80% of the commissions for sales to Carrier Corp., Plaintiffs would be awarded the greatly reduced commission rate of 1.0% for the life of the customer's purchases.

11. Thereafter, Defendant abided by the 1.0% commission requirement for sales to Carrier Corp. that occurred from August 2014 through February 2022.

12. Plaintiffs' contract was terminated by Defendant effective February 28, 2022.

13. There were no provisions in the April 11, 2014 email limiting the duration of the payment of commissions at 1.0% for sales to Carrier Corp., resulting in an agreement that Plaintiffs would be compensated for sales occurring during the life of the Carrier Corp. account (*Commission for payments received from May 1 [2014] onward will be made at 1.0%."* – see Exhibit "B"). This is not an unusual provision when an independent sales rep brings in a key account for its initial business with a manufacturer, as was done here. Moreover, Plaintiffs only agreed to an 80% decrease in the commission structure for sales to Carrier Corp. (by far Plaintiffs' top account) because Plaintiffs expected to receive the reduced commissions for the life of Carrier Corp.'s purchases.

14. As for the commission structure for other accounts, Defendant's President stated in his April 11, 2014 email: *"we will... determine a workable commission structure for any ... new accounts..."* No other substantive contractual terms were included in the April 11, 2014 email, as evidenced by Exhibit "B".

15. In or about 2011, Plaintiffs began cultivating sales and marketing Defendant's products to Atlas Copco, or its division Power Technique North America ("Atlas Copco"). After 7 years of performing follow-up services in an attempt to gain sales, Plaintiffs were finally able to procure substantial sales to Atlas Copco beginning in 2018.

16. As contemplated by the terms of the April 11, 2014 e-mail, the parties determined that a *"workable commission structure"* for the Atlas Copco account would be 5.0%. Defendant then abided by its agreement to pay 5.0% commissions for all sales to Atlas Copco from 2018 through February 2022. As with the parties' agreement for sales to Carrier Corp., there is no contractual limit on how long Defendant must pay 5.0% commissions on sales to Atlas Copco.

17. In or about 2017, Plaintiffs began cultivating sales and marketing Defendant's products to Gaston Electronics. After 6 months of performing such services, Plaintiffs were able to procure substantial sales from this customer also.

18. As contemplated by the terms of the April 11, 2014 e-mail, the parties determined that a *"workable commission structure"* for the Gaston Electronics' account would be 3.0%. Defendant then abided by its agreement to pay 3.0% commissions for all sales to this customer, from 2018 through February 2022. As with sales to the other accounts at issue, there is no written contractual limit on how long Defendant must pay 3.0% commissions on sales to this customer.

19. Plaintiffs' contract with Defendant, as memorialized in the April 11, 2014 email, was terminated by Defendant effective February 28, 2022. A true and correct copy of the termination notice is attached hereto as Exhibit "C". Although there are no limitations in the April 11, 2014 email on the duration of commission payments

to the accounts at issue, nor was such a limitation agreed upon elsewhere, Defendant has stated that it will not pay commissions for any sales to the three accounts stated above, past February 2022. Defendant has made this declaration despite knowing that Plaintiffs would not have agreed to terminate the 2003 Contract and accept a greatly reduced commission structure without an agreement from Defendant to pay commissions for the life of the customer relationship.

## FIRST CAUSE OF ACTION
(For breach of written contract)

20. Plaintiffs hereby refer to paragraphs 1 through 19 of the PREFATORY ALLEGATIONS, and incorporate the same herein, as though fully set forth in this paragraph.

21. On or about April 12, 2014, Plaintiffs accepted the written offer in Defendant's April 11, 2014 email, resulting in a written contract with Defendant (the "2014 Contract").

22. Pursuant to the 2014 Contract (Exhibit "B") Plaintiffs were appointed to serve as Defendant's sales representative for Defendant's products sold to Carrier Corp. and any other accounts developed by Plaintiffs.  Defendant thereby agreed to pay Plaintiffs sales commissions for sales to Carrier Corp. at a rate between 1.0% and 2.0%, depending on the date of the sale; and to pay sales commissions to Plaintiffs for sales to other newly developed accounts at a percentage to be agreed

upon by the parties at the time any such accounts were established.

23. Plaintiffs fully performed all conditions, covenants, and promises required of them pursuant to the 2014 Contract.

24. On or about December 29, 2021, Defendant sent Plaintiffs a notice of termination of the 2014 Contract, with an effective termination date of February 28, 2022. A true and correct copy of said termination notice is attached hereto as Exhibit "C."

25. In terminating the 2014 Contract, Defendant has breached said agreement in at least the following ways:

A) By terminating the 2014 Contract in an impermissible attempt to avoid paying commissions to Plaintiffs for accounts procured by Plaintiffs which have produced substantial sales, and which will continue to produce long-term substantial sales based upon Plaintiffs' pre-termination services, in violation of the parties' agreement and in violation of the 2014 Contract's implied covenant of good faith and fair dealing; and

B) By representing that it will not pay any commissions to Plaintiffs for sales to Carrier Corp., Atlas Copco, or Gaston Electronics which occur after the effective termination date although there is no provision in the 2014 Contract that limits Plaintiffs' rights to receive commissions for sales to these

accounts only to sales made prior to the termination date, thereby committing an anticipatory breach of future obligations under the 2014 Contract;

26. As a proximate result of these breaches, Plaintiffs have been denied commissions and will continue to be denied commissions, resulting in damages in excess of the jurisdictional threshold.

27. Defendant is liable to Plaintiff for, and Plaintiffs should be granted a judgment against Defendant for, both commissions that have accrued as of the date hereof as well as commission that accrue on future sales to Carrier Corp., Atlas Copco, or Gaston Electronics until such time as those customers terminate their relationships or accounts with Defendant.

## SECOND CAUSE OF ACTION
(For Violation of O.C.G.A. §§ 10-1-700 through 10-1-704)

28. Plaintiffs hereby refer to paragraphs 1 through 19 of the PREFATORY ALLEGATIONS, and paragraphs 21 through 27 of the FIRST CAUSE OF ACTION, and incorporate the same herein, as though fully set forth in this paragraph.

29. The contract referred to in the FIRST CAUSE OF ACTION above is subject to the provisions of O.C.G.A. §§ 10-1-700 through 10-1-704, since Plaintiffs meet the definition of a "Sales representative" and Defendant meets the definition of a "Principal" found in O.C.G.A. §10-1-700.

30. By failing to pay all commissions to Plaintiffs under the 2014 Contract within 30 days of termination of such agreement and by failing and refusing to pay post-termination commissions within 30 days of their due date, Defendant is subject to the penalty provisions found in §10-1-702(b). Defendant is therefore liable to Plaintiffs for: (i) their contractual damages; (ii) exemplary damages not to exceed double the amount not timely paid; and (iii) attorney's fees actually and reasonably incurred, all in a sum according to proof.

## THIRD CAUSE OF ACTION
### (For Quantum Meruit)
**- Pled in the alternative to the first cause of action -**

31. Plaintiffs hereby refer to paragraphs 1 through 19 of the PREFATORY ALLEGATIONS, and incorporate the same herein, as though fully set forth in this paragraph.

32. If for some reason the Court finds that the contract pled in the FIRST CAUSE OF ACTION was nonbinding, unenforceable, or for any other reason incapable of acting as the basis for a legal claim by Plaintiffs, then nonetheless, within the last 6 years, Plaintiffs performed certain independent sales marketing services for and at the specific request of Defendant. These services related to Plaintiffs servicing existing business to Carrier Corp. and also seeking to develop new business opportunities and sales for Defendant, with Atlas Copco and Gaston

Electronics.

33.    Through Plaintiffs' efforts, a long-term and voluminous distribution arrangement was put in place for Defendant's benefit with Carrier Corp., an entity with whom Defendant desired to develop sales but had no sales prior to Plaintiffs' involvement. That distribution is forecasted to last indefinitely, notwithstanding Plaintiffs' termination by Defendant.

34.    Plaintiffs' services also resulted in long-term substantial distribution arrangements with Atlas Copco and Gaston Electronics, which are expected to continue to grow and result in substantial sales for many years, notwithstanding Plaintiffs' termination by Defendant.

35.    Upon information and belief, the fair and reasonable value of the services rendered to Defendant is in a sum not less than $200,000.00. However, a true figure cannot be obtained without an accounting by Defendant, or through discovery.

36.    Plaintiffs' efforts to cultivate accounts with Carrier Corp., Atlas Copco, and Gaston Electronics constitute valuable services. Those services were performed at Defendant's request and the benefits thereof were accepted by Defendant. Defendant knew that Plaintiffs expected compensation for such services and, more specifically, Defendant knew that, in agreeing to the termination of its prior

commission structure, Plaintiffs expected to receive its commissions for the duration

of the customer relationships; and such expectation was reasonably held by Plaintiffs

at the time the services were performed.

**FOURTH CAUSE OF ACTION**
(For Promissory Estoppel)
**- Pled in the alternative to the first cause of action -**

37.    Plaintiffs hereby refer to paragraphs 1 through 19 of the PREFATORY

ALLEGATIONS and incorporate the same herein as though fully set forth in this

paragraph.

38. If for some reason the Court finds that the contract pled in the first cause

of action is nonbinding, unenforceable, or for any other reason incapable of acting

as the basis for a legal claim by Plaintiffs, then nonetheless, during the period from

2014 through 2018, Defendant promised Plaintiffs that Plaintiffs would be paid

commissions for all current and future sales procured from Carrier Corp., Atlas

Copco, and Gaston Electronics, with such commissions to be paid at the rate of 1.0%

for sales to Carrier Corp. (for all sales after July 31, 2014); 5.0% for sales to Atlas

Copco, and 3.0% for sales to Gaston Electronics. The parties' course of dealing

corroborates these promises.

39.    Plaintiffs reasonably relied on these promises made by Defendant, as

Kopscik had a lengthy and strong personal relationship with most of Defendant's

upper management. In reliance upon Defendant's promises and representations, Plaintiffs refrained from taking certain actions they otherwise would have taken to assure the success of their business.

40.     Based on its promises, Defendant is estopped from denying Plaintiffs their commissions for sales procured through Plaintiffs' efforts.

41.     Defendant terminated Plaintiffs' services effective February 28, 2022, and has since refused to pay Plaintiffs commissions for sales to customers that Plaintiffs procured for Defendant. Such refusal includes sales that occurred both prior to and after termination of Plaintiffs' services.

42.     Plaintiffs have been damaged by Defendant in a sum to be determined through discovery and proof at trial. The amount due is within the sole control of Defendant, and therefore must be determined through the FIFTH CAUSE OF ACTION for an accounting, or through discovery.  On information and belief, the amount of Plaintiffs' damages is not less than $200,000.00.

## FIFTH CAUSE OF ACTION
(For an Accounting)

43. Plaintiffs hereby refer to paragraphs 1 through 19 of the PREFATORY ALLEGATIONS, paragraphs 21 through 27 of the FIRST CAUSE OF ACTION, paragraphs 29 through 30 of the SECOND CAUSE OF ACTION, paragraphs 32 through 36 of the THIRD CAUSE OF ACTION, and paragraphs 38 through 42 of

the FOURTH CAUSE OF ACTION, and incorporate the same herein, as though fully set forth in this paragraph.

44. Between 2021 and the present date, Defendant has benefited from numerous sales of its products to customers procured by Plaintiffs, namely for sales to Carrier Corp., Atlas Copco, and Gaston Electronics. However, Defendant failed to account for and pay Plaintiffs all sales commissions due and owing for these sales, as required by the 2014 Contract, and/or Defendant's promises.

45. The amount due from Defendant is unknown to Plaintiffs and cannot be ascertained without an accounting of the disbursements to and receipts from the customers at issue, or through discovery. Plaintiffs are informed and believe and thereon allege that the amount owed, however, is in a sum in excess of $200,000.00. Plaintiffs have demanded an accounting from Defendant and payment of the sums by which it wrongfully profited. However, Defendant has failed and refused, and continues to fail and refuse, to provide such accounting and/or to pay the sums owed.

## SIXTH CAUSE OF ACTION
(for Attorneys' Fees and Expenses of Litigation Pursuant to O.C.G.A. § 13-6-11)

46. Plaintiffs hereby refer to paragraphs 1 through 19 of the PREFATORY ALLEGATIONS, paragraphs 21 through 27 of the FIRST CAUSE OF ACTION, paragraphs 29 through 30 of the SECOND CAUSE OF ACTION, paragraphs 32 through 36 of the THIRD CAUSE OF ACTION, and paragraphs 38 through 42 of

the FOURTH CAUSE OF ACTION, and paragraphs 44 through 45 of the FIFTH CAUSE OF ACTION and incorporate the same herein, as though fully set forth in this paragraph.

47. Defendant has acted in bad faith, has been stubbornly litigious, and has caused Plaintiffs unnecessary trouble and expense, entitling Plaintiffs to recover the attorneys' fees and expenses of litigation incurred in bringing this action, pursuant to O.C.G.A. § 13-6-11.

48. Defendant has flatly ignored Plaintiffs' demands that the unpaid commissions be paid and has refused to engage in any discussions concerning Plaintiffs' demands, essentially challenging Plaintiffs to file a lawsuit as a necessary condition to recovering any portion of its damages.

49. Defendant's behavior entitles Plaintiff to recover its expenses of litigation, including its attorneys' fees, pursuant to O.C.G.A. § 13-6-11.

WHEREFORE, Plaintiffs pray for judgment as follows:

### ON THE FIRST CAUSE OF ACTION

1. For Plaintiffs' contractual damages in a sum according to proof, plus pre-judgment interest pursuant to O.C.G.A. § 13-6-13;

2. That judgment be entered establishing Plaintiffs' entitlement to future commissions owed by Defendant on sales to Carrier Corp, Atlas Copco,

and Gaston Electronics; and

3.  For Plaintiffs' attorney fees and court costs, in a sum according to proof.

## ON THE SECOND CAUSE OF ACTION

1.  For Plaintiffs' contractual damages, in a sum according to proof, plus pre-judgment interest pursuant to O.C.G.A. § 13-6-13;

2.  For double Plaintiffs' contractual damages, in a sum according to proof;

3.  For Plaintiffs' attorney fees and court costs, in a sum according to proof; and

4.  That Plaintiffs be granted post-judgment interest as allowed by law.

## ON THE THIRD CAUSE OF ACTION

1.  For Plaintiffs' compensatory damages in a sum according to proof;

2.  For Plaintiffs' attorney fees and court costs, in a sum according to proof; and

3.  That Plaintiffs be granted post-judgment interest as allowed by law.

## ON THE FOURTH CAUSE OF ACTION

1.  For Plaintiffs' compensatory damages in a sum according to proof;

2.  For Plaintiffs' attorney fees and court costs, in a sum according to proof; and

3.  That Plaintiffs be granted post-judgment interest as allowed by law.

### ON THE FIFTH CAUSE OF ACTION

1. For an accounting by Defendant of all sales of its products to Carrier Corp., Atlas Copco, and Gaston Electronics from January 2022 through the present date;

2. For payment to Plaintiffs of the amount due from Defendant as a result of the accounting; and

3. For interest on that amount at the maximum legal rate.

### ON THE SIXTH CAUSE OF ACTION

1. That judgment be entered requiring Defendant to pay Plaintiffs' reasonable attorneys' fees and other expenses of litigation as detailed above.

### ON ALL CAUSES OF ACTION

For such other relief as the court deems just and proper.

### DEMAND FOR JURY TRIAL

Plaintiffs hereby request and respectfully demand that this matter be tried before a jury.

Respectfully submitted this 5th day of April, 2022.

LANGDALE VALLOTTON, LLP


JAMES R. MILLER
Georgia Bar No. 159080
Counsel for Plaintiffs

Langdale Vallotton, LLP
1007 North Patterson Street
Post Office Box 1547
Valdosta, Georgia 31603-1547
(229) 244-5400 – Telephone
(229) 244-5475 – Facsimile
*jmiller@langdalelaw.com*

SANDERS & MONTALTO, LLP


SCOTT M. SANDERS   Miller with express permission, signed by James R.
California Bar No. 135753
*Pro Hac Vice application to be submitted*
Counsel for Plaintiffs

Sanders & Montalto, LLP
21250 Hawthorne Blvd., Suite 850
Torrance, California 90503
(310) 792-4949 – Telephone
(866) 792-4408 – Facsimile
*scott@sandersmontalto.com*

-18-